The action seeking damages for bad faith was filed within 60 days of the date that Ms. Livingston filed her proof of loss with Auto Owners Insurance Company. The policy issued to Ms. Livingston by Auto Owners contained the following provision:
 "We [Auto Owners] will pay within 60 days after we receive your [Ms. Livingston's] proof of loss, and the amount of loss is finally determined by an agreement between you and us, a court judgment or an appraisal award."
At the time suit was filed alleging bad faith against Auto Owners, Auto Owners had not made any final decision as to the adjustment or denial of Ms. Livingston's claim. In order to determine the sufficiency of Ms. Livingston's evidence of bad faith, we must view only the actions of Auto Owners prior to August 16, 1988, the date this suit was filed.
The fire occurred on May 14, 1988; the proof of loss was filed on June 23, 1988; and this action was filed on August 16, 1988.
The house was intentionally set on fire by the pouring of flammable liquids throughout the house. The fire occurred three months after Auto Owners had issued the fire insurance policy. The policy provided $30,000 more coverage than Ms. Livingston had previously had on the house. This increase was based on the *Page 1044 
insurance agent's recommendation that Ms. Livingston should obtain 100% replacement coverage to replace the Livingstons' "dream house," in which they hoped to retire. After the fire, Auto Owners learned that the house was actually in poor condition and had shown evidence of substantial termite damage and roof leakage damage shortly before the fire. The house had been placed on and off of the market for sale without success — initial sales price being $149,500, which price was later reduced by Ms. Livingston. There were two mortgages on the house. One mortgage had a monthly payment of $438 a month; the other had a payment of $8,000 due in July of each year. The house was leased to a former employee of Mr. Livingston, who had had numerous fire and theft claims with various insurance companies. The tenant paid $600 a month rent, which was $6,056 less annually than the combined mortgage payments on the house. Ms. Livingston's former employee was the last known person to leave the house, and he admitted that the house was fully locked and secured when he left. There was no evidence of forcible entry to the house. After the fire, all doors to the house were found locked except one. Mr. Livingston testified that the Livingstons did not have a key to the house. Ms. Livingston testified that they did have a key and that the Livingstons and the tenant were the only ones who had keys to the house. The Livingstons had refused to furnish Auto Owners financial information, other than the fact that Mr. Livingston's annual salary was approximately $13,000 and that Mr. Livingston's only source of income came from his bail bonding company. Upon advice of counsel, the Livingstons had refused to furnish any information concerning the finances of the bail bonding company.
I must hold that the trial court ruled properly in granting Auto Owner's motion for summary judgment on Ms. Livingston's claim based on an alleged bad faith failure to pay. Certainly, under the facts in this case, Auto Owners should have had at least 60 days from the date the proof of loss was filed (the period of time provided in the policy of insurance) to evaluate the claim.
Insurance companies should exercise good faith. The bedrock of our bad faith causes of action is:
 "The law will not allow an insurer to willfully refuse to evaluate or honor a claim with the knowledge that the avowed purpose of the insurance contract was to protect the insured at its weakest and most perilous time of need."
Chavers v. National Sec. Fire Cas. Co., 405 So.2d 1, 6 (Ala. 1981). However, a bad faith action should rest on a firmer foundation than the evidence in this case, even considering the undisputed facts and the most favorable view that could be taken of the disputed evidence.
MADDOX, J., concurs.